IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRIAN H. HARRISON,            :

    Plaintiff,            :

vs.                          :   CIVIL ACTION 04-00119-WS-B

TERRY MASON, *et al.*,        :

    Defendants.          :


REPORT AND RECOMMENDATION

    Plaintiff, an Alabama prison inmate proceeding *pro se,* filed
a Complaint under 42 U.S.C. § 1983 and paid the $150.00 filing
fee.  This action has been referred to the undersigned for
appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local
Rule 72.2(c)(4).  Upon careful review, it is recommended that
Plaintiff's federal claims be dismissed with prejudice, prior to
service of process, pursuant to 28 U.S.C. § 1915A(b)(1), because
they are frivolous or fail to state a claim upon which relief can
be granted, and that Plaintiff's state-law claims be dismissed
without prejudice.

I.  Nature of Proceedings.

    A.  Complaint (Doc. 1).

    Plaintiff named as Defendants persons associated with
criminal proceedings that have resulted in Plaintiff's conviction
for shooting into an unoccupied vehicle on March 12, 2002, and a

1

sentence of twenty-five years' imprisonment.  Those persons are:
Wesley Weaver and Terry Mason, investigators with the Sheriff's
Department for Monroe County, Alabama; Tommy Chapman, District
Attorney for Monroe County; Dawn Hare and Steve Wadlington,
Assistant District Attorneys for Monroe County; Samuel H. Welch,
Jr., Circuit Court Judge for Monroe County; William Causey, Jr.,
District Court Judge for Monroe County; Dewayne Beasley,
Plaintiff's appellate criminal counsel; Laura R. Grantham,
Plaintiff's Rule 32 counsel and criminal counsel at his second
trial; and Gena Mixon Kelly, Plaintiff's former girlfriend.

    The following is a description of the relevant facts as
provided by Plaintiff.  On January 8, 2001, Defendant Kelly,
Plaintiff's former girlfriend, told Plaintiff that "she had
something for him if he did not help pick [her] bad checks up."
(Doc. 1, Attachment at 14).  Plaintiff told her to get out of the
house. (*Id.*).  While helping Defendant Kelly pack her belongings
into her car, Plaintiff snatched a gun from the driver side of
the car. (*Id.*).  Defendant Kelly grabbed him from behind, causing
the gun to discharge and hit the car. (*Id.*).  According to
Plaintiff, Defendant Kelly "stated that she knew [his] position
and that [he] would go down as she drove off." (*Id.*).  Defendant
Kelly called law enforcement and gave a statement about the
incident in order to cause Plaintiff to be arrested. (*Id.*).

    On January 9, 2001, Plaintiff turned himself in and was

arrested on the charge of discharging a weapon into an **occupied** vehicle. (*Id.* at 3).  Plaintiff contends that his arrest was without probable cause and was an unreasonable seizure because the information was not independently corroborated, Defendant Kelly's statement that Plaintiff shot her vehicle twice was fabricated, the affidavit supporting the warrant was stale, and Defendant Kelly did not verify that vehicle was occupied. (*Id.* at 13).

On or about January 10 or 11, 2001, Defendant Kelly's step-father and mother cleared up her bad checks, and on January 12, 2002, Kelly returned to Plaintiff on the pretense that she would drop the charges and tell law enforcement that she had given a false statement. (*Id at 14.*).  Kelly called Monroe County investigators Larry Ikner, Tommy Chapman, and Terry Mason in an attempt to have the charges dropped; however, she was informed that she would be arrested if she did not testify before the grand jury. (*Id.* at 3-4).

On February 7, 2001, Kelly testified before the Monroe County grand jury, which indicted Plaintiff for discharging a firearm into an **unoccupied** vehicle. (*Id.*).  On February 13, 2001, Plaintiff hired Windel Owens to defend him on the charge, and Kelly told Mr. Owens that the shooting occurred accidentally and that she had attempted to drop the charge but was threatened if she did not testify. (*Id.*).  Mr. Owens obtained two to three

3

trial continuances.  While awaiting trial, Plaintiff and Kelly were arrested in Conecuh County, Alabama, for burglary, first degree. (*Id.*).  Conecuh County and Monroe County are in the Thirty-Fifth Judicial District. (*Id.*).

Shortly following Plaintiff's arrest on the Conecuh County charges, Monroe County District Attorney Tommy Chapman sought to have Plaintiff's bond revoked, and on April 18, 2001, Plaintiff's bond was revoked by Judge Welch on Chapman's motion. (*Id.* at 5). According to Plaintiff, at a plea hearing on May 23, 2001, he told Mr. Owens, who was his trial counsel, that he was innocent; however, Mr. Owens said that he could only plead Plaintiff out. (*Id.* at 6).  Plaintiff requested and was granted a continuance to think about the state's plea offer. (*Id.*).  On May 30, 2001, when Plaintiff returned to the courthouse, he reviewed the discovery and learned that Defendant Kelly had given a statement to investigators Mason and Weaver that he had shot the car twice. (*Id.*).  Thereupon, Plaintiff requested another continuance so he could retain a ballistics expert to establish that the car was hit only once. (*Id.*).  Plaintiff's request was denied, and shortly thereafter, he pleaded guilty and was sentenced to ten years' imprisonment with two years to be served while incarcerated and five years to be served on probation. (*Id.*).

Defendant Dewayne Beasley was appointed to represent Plaintiff on appeal. (*Id.*).  During August, 2001, Defendant

4

Beasley met with Plaintiff at Limestone Correctional Facility about the issues Plaintiff wanted raised on appeal. (*Id.*). According to Plaintiff, he instructed Beasley to suspend the Notice of Appeal and file a Motion to Withdraw Guilty Plea or for a New Trial. (*Id.* at 7).  Notwithstanding Plaintiff's instructions, Defendant Beasley filed an appellate brief. (*Id.*). Upon receipt of his copy of the brief, Plaintiff wrote Beasley and told him that the appeal would be dismissed because the issues were not preserved for review.  He also requested that Beasley forward to him the record so that he could file a Rule 32 petition. (*Id.*).

On October 13, 2001, Plaintiff filed a petition pursuant to Rule 32 challenging his conviction and sentence based on ineffective assistance of trial and appellate counsel. (*Id.*).  In January 2002, Plaintiff filed a petition for the Writ of Mandamus against Defendant Circuit Judge Welch, who then appointed Defendant Grantham to represent Plaintiff, and set the case for a pre-trial conference. (*Id.*).  Before the conference, Defendant Grantham wrote Plaintiff telling him that his claim was "meritousless" and to provide her with case law to support his position. (*Id.*).  Plaintiff gave her case law, and his Rule 32 petition was granted the same day. (*Id.*).

On February 12, 2002, Plaintiff was returned to the Monroe County Jail where Jailer Jernigan told him that Defendant Causey,

5

the Monroe District Judge, had placed a hold on Plaintiff because
Chapman, the District Attorney, was seeking to have Plaintiff's
bond increased. (*Id.*). Plaintiff became upset because Chapman was
present at the Rule 32 hearing where Circuit Judge Welch granted
Plaintiff's Rule 32 petition and ordered his bond reinstated.
(*Id.*). On February 13 or 14, 2002, when Plaintiff went before
Defendant District Judge Causey, Plaintiff was informed that the
judge would only talk with Plaintiff's counsel, Grantham. (*Id.* at
8). After Plaintiff's family contacted Grantham, she went to see
District Judge Causey and then Plaintiff. (*Id.*).

On February 19, 2002, after Plaintiff made bond in Monroe
County, he was transferred to the Conecuh County Jail for the
purpose of posting a $50,000 bond. (*Id.*). When Plaintiff arrived,
he learned that there was a hold on him for a D.U.I. charge that
he had received on March 16, 2001. (*Id.*). Plaintiff's grandmother
had his bond transferred, picked him up, and took him to his
hearing at the Monroe County courthouse. (*Id.* at 9). District
Judge Causey was sitting in for Circuit Judge Welch and told
Plaintiff that he must retain an attorney because he would not be
allowed to represent himself. (*Id.*). Plaintiff then retained
Grantham because she was in the courtroom. (*Id.*).

On March 4, 2002, Grantham filed a Motion for Continuance in
order to retain a ballistics expert. (*Id.*). The motion was denied
by Circuit Judge Welch and trial was set for March 12, 2002.

(*Id.*).  At trial, Chapman and Hare, who represented the state, offered the testimony of Kelly, who testified that Plaintiff had shot her car twice and had assaulted her. (*Id.*).  Terry Mason testified that as the lead investigator, he could determine that the holes were bullet holes, but he did not notice any sign of an assault on the victim. (*Id.*).  Investigator Weaver testified to the same facts. (*Id.*).  Although Plaintiff testified that one shot was accidentally fired, he was convicted and then sentenced on April 3, 2002 to twenty-five years' imprisonment. (*Id.* at 9-10).

On April 12, 2002, Plaintiff's grandmother hired an independent ballistics expert, Dr. Lonny R. Harden, to examine the hole in the bumper, identified as State Exhibit 2. (*Id.* at  10). Dr. Harden determined that the hole was not a bullet hole but a punch hole for a tag. (*Id.*).  On July 22, 2002, at a hearing on Plaintiff's Motion for New Trial, Dr. Harden was allowed to testify. (*Id.* at 12).  Defendant Steve Wadington represented the State of Alabama at the hearing. (*Id.*). Defendant Beasley was appointed to represent Plaintiff on appeal despite the fact that Plaintiff had previously prevailed on his Rule 32 petition by arguing that Beasley had provided him ineffective assistance as appellate counsel. (*Id.* at 10).

For relief, Plaintiff seeks a declaration "that the acts and omissions of each defendant . . . subject [sic] plaintiff to the following and above injuries and damages[,]" and compensatory,

nominal, and punitive damages, and specifies that he is not seeking an invalidation of his conviction. (*Id.* at 32). Plaintiff also requests a "[p]rospective injunction against each defendant for any futher [sic] violation of plaintiff's federally protected rights" as well as prosecution of "each and every" defendant for violations of the Alabama Code.

**B.   Subsequent Proceedings.**

Plaintiff's direct appeal from criminal trial was not successful. <u>Harrison v. State</u>, 879 So.2d 594 (Ala. Crim. App. 2003), *cert. denied,* (Ala. Oct. 10, 2003). Afterwards, Plaintiff filed a habeas petition in this Court, which is still pending. <u>Harrison v. Culliver</u>, CA 05-0031-BH-B.   On direct appeal, in <u>Harrison v. State</u>, 879 So.2d 594, *supra*, Plaintiff raised the following grounds: (1) he was erroneously sentenced as a habitual offender, <u>Id.</u> at 596; (2) the trial court erroneously denied his motion for a continuance, <u>Id</u>. at 597-99; (3) the indictment failed to allege the element of mental culpability, <u>Id</u>. at 599-607; (4) the trial court erroneously granted the State's *Batson* motion, <u>Id</u>. at 607-08; and (5) the trial court erroneously admitted evidence about collateral bad acts. <u>Id</u>. at 608.   Having considered these grounds, the Court of Criminal Appeals affirmed the trial court's judgment.   <u>Id</u>. at 608.

In regards to the denial of Plaintiff's motion for continuance, the appellate court found the trial court did not

8

abuse its discretion because there was no showing as to what the ballistics expert would have presented or that he had used due diligence to obtain a ballistics expert. Id. at 598.  With regards to Plaintiff's assertions concerning the indictment, the appellate court determined that Plaintiff was not misled in preparing his defense because he "thoroughly prepared and presented his defense - i.e., that the shooting was accidental[,]" Id. at 607, and thus concluded that any imperfection did not prejudice Plaintiff's rights.  Id.

## II.  Standards of Review Under 28 U.S.C. § 1915A(b)(1).

Under 28 U.S.C. § 1915A(b)(1), the Court is required to review a complaint filed by a prisoner against a governmental official and to "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"[1]  This

_____

[1]Section 1915A(a) and (b)(1) provides:

(a)  The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.

(b)  On review the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

(1) is frivolous, malicious or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

9

§ 1915A review "applies to any suit by a prisoner against certain government officials or entities regardless of whether that prisoner is or is not proceeding *in forma pauperis*." <u>Martin v. Scott</u>, 156 F.3d 578, 579 (5th Cir.), *cert. denied*, 527 U.S. 1041, 119 S.Ct. 2405, 144 L.Ed.2d 803 (1999). The present action is subject to review under § 1915A because Plaintiff paid the $150.00 filing fee and was a prisoner when he filed this action.[2] Under 28 U.S.C. § 1915A, a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, <u>Id</u>. at 327, 109 S.Ct. at 1833, the claim seeks to enforce a right which clearly does not exist, <u>Id</u>., or there is an affirmative defense that would defeat the claim, such as the statute of limitations, <u>Clark v. Georgia Pardons & Paroles Bd.</u>, 915 F.2d 636, 640 n.2 (11th Cir. 1990). Judges are accorded "not only the authority to dismiss [as

---

[2]The predecessor to this section is 28 U.S.C. § 1915(d). Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. §§ 1915A and 1915(e)(2)(B) in the Prison Litigation Reform Act of 1996 ("PLRA"), the frivolity and the failure to state a claim analysis contained in <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), was unaltered. <u>Leal v. Department of Corrections</u>, 254 F.3d 1276, 1279-80 (11th Cir. 2001); <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044, 122 S.Ct. 624, 151 L.Ed.2d 545 (2001); <u>Brown v. Bargery</u>, 207 F.3d 863, 866 n.4 (6th Cir. 2000). However, dismissal under the PLRA is now mandatory. *Bilal,* 251 F.3d at 1348-49.

frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833.  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); see Leal v. Georgia Dept. Of Corrections, 254 F.3d 1276, 1279 (11th Cir. 2001) (the standard for failing to state claim under § 1915A(b)(1) and § 1915(e)(2)(B)(ii) is the standard contained in FED.R.CIV.P. 12(b)(6)).

**III.  Analysis.**

As a preliminary matter, the undersigned notes that in filing the instant action, Plaintiff did not complete the Court's form for a Section 1983 action, but instead utilized only a portion of the form, and then attached a 32-page typewritten statement of his claims.  Although Plaintiff completed the form in his § 1983 action in Harrison v. Tate, et al., CA 02-392-CG-B (S.D. Ala. Mar. 15, 2006), for whatever reason, he chose not to do so in this case.  This of course contributed to Plaintiff's Complaint being

11

excessively lengthy and not complying with the requirement of Rule
8(a) of the Federal Rules of Civil Procedure that the complaint be
"a short and plain statement of the claim showing that [plaintiff]
is entitled to relief [from the defendant]."   Moreover, the
Court's form was devised so to aid defendants and the Court in
identifying all of the claims against the defendants.
Notwithstanding the deficiencies in Plaintiff's filing, the Court
has gathered all of the claims against a particular Defendant and
then discussed the claims against that Defendant.

**A.  Claims Against Defendants Terry Mason and Wesley Walker.**

Plaintiff alleges investigators Mason and Walker violated his
rights under the Fourteenth Amendment and the Alabama Constitution
of 1901 when they arrested him on January 9, 2001, on the charge
of firing into an occupied vehicle. (Plaintiff's Cause of Action A
(hereinafter "Claim A")).  Plaintiff contends that there was no
probable cause because the information was not independently
corroborated, Defendant Kelly had not verified that the vehicle
was occupied, and the affidavit supporting the warrant was stale.
Thus, his seizure was unreasonable. (Claim A).  Defendants Mason
and Weaver are alleged to have conspired with District Attorney
Chapman and assistant District Attorney Hare when they gave them
evidence and Defendant Kelly's statement that they knew or should
have known was false, and when they testified on March 12, 2002,
on behalf of the State at trial that two shots were fired into

Defendant Kelly's vehicle.  Plaintiff contends that their actions were taken for the purpose of depriving him of a fair trial. (Claim H).

Some of Plaintiff's claims against Defendants Mason and Walker are barred by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), while some of his other claims are subject to dismissal for another reason - the two-year statute of limitations.  The Heck decision and its preclusive effect will be discussed first and then the claims that are not precluded from review by Heck will be discussed. Id. at 486-87, 114 S.Ct. at 2372-73.

In Heck, a prisoner filed a § 1983 damages action against the prosecutors and investigator in his criminal case for their actions that resulted in his conviction.  The Supreme Court analogized the plaintiff's claim to a common-law cause of action for malicious prosecution, which had as a required element that the accused prove the termination of the prior criminal proceeding for the accused. Id. at 484, 114 S.Ct. at 2371.  The Heck Court opined:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it had always applied to actions for malicious prosecution (footnote omitted).

We hold that, in order to recover damages
for allegedly unconstitutional conviction or
imprisonment, or for other harm caused by
actions whose unlawfulness would render a
conviction or sentence invalid, (footnote
omitted), a § 1983 plaintiff must prove that
the conviction or sentence has been reversed
on direct appeal, expunged by executive order,
declared invalid by a state tribunal
authorized to make such determination, or
called into question by a federal court's
issuance of a writ of habeas corpus, 28 U.S.C.
§ 2254.  A claim for damages bearing that
relationship to a conviction or sentence that
has *not* been so invalidated is not cognizable
under § 1983.  Thus, when a state prisoner
seeks damages in a § 1983 suit, the district
court must consider whether a judgment in
favor of the plaintiff would necessarily imply
the invalidity of his conviction or sentence;
if it would, the complaint must be dismissed
unless the plaintiff can demonstrate that the
conviction or sentence has already been
invalidated.  But if the district court
determines that the  plaintiff's action, even
if successful, will *not* demonstrate the
invalidity of any outstanding criminal
judgment against the plaintiff, the action
should be allowed to proceed (footnote
omitted), in the absence of some other bar to
the suit (footnote omitted).

Id. at 486-87, 114 S.Ct. at 2372-73.

Thus, if the damages claims in this action would have the
effect of invalidating Plaintiff's conviction were the Court to
rule favorably on them, then Plaintiff must demonstrate that his
conviction has been invalidated in order to avoid dismissal.  On
the other hand, if Plaintiff's § 1983 damages claims will not have
the effect of invalidating his conviction were the Court to rule
favorably on them, then his claims may proceed in this action

14

unless another bar exists to the claims proceeding.  <u>Id</u>. at 487
n.7, 114 S.Ct. at 2373 n.7.

     In Plaintiff's Answers to Interrogatories, he states that he
is incarcerated pursuant to his conviction for discharging a
weapon into an unoccupied vehicle, which conviction has not been
invalidated. (Doc. 6).  In his Answers, Plaintiff also argues that
his present conviction is distinct from his prior conviction
although both are based on the same incident but his first
conviction was set aside as a result of the Rule 32 proceeding for
ineffective assistance of appellate and trial counsel. (Doc. 6 at
2).  Plaintiff has not shown however that there was a favorable
termination at the conclusion of the Rule 32 proceeding since he
was retried and convicted for the crime of discharging a weapon
into an unoccupied vehicle.   Thus, the criminal proceedings for
this crime are considered to be one criminal case that has
culminated in his present conviction. <u>Brandley v. Keeshan</u>, 64 F.3d
196, 199 (5th Cir.)(holding that the reversal of a conviction and
remand for new trial is not a favorable termination, but a
plaintiff can show a favorable termination of prosecution for the
crime by an order of acquittal, dismissal based on decision not to
prosecute, etc.), *cert. denied,* 516 U.S. 1129, 116 S.Ct. 947, 133
L.Ed.2d 872 (1996).  Because Plaintiff has not shown that his
prosecution for the crime of discharging a weapon into an
unoccupied vehicle terminated favorably for him, his argument is

without merit.

The damages claims lodged against Defendants Mason and Weaver that would have the effect of invalidating Plaintiff's conviction if the Court were to rule favorably upon them are: they conspired when they gave Defendants Chapman and Hare evidence and Defendant Kelly's statement, which they knew or should have known was false, and then on March 12, 2002, they testified at trial for the State that two shots were fired into Defendant Kelly's vehicle. (Claim H).  These claims against Defendants Mason and Weaver are therefore barred by <u>Heck</u> and are due to be dismissed as frivolous.

These claims also fail for other reasons.  Plaintiff's allegation of a conspiracy fails to state a claim upon which relief can be granted because it is a conclusory allegation lacking any supporting facts to show that an agreement was reached.  In order to state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff "must show that the parties 'reached an understanding' to deny plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." <u>Bailey v. Board of County Comm'rs of Alachua County</u>, 956 F.2d 1112, 1122 (11th Cir.)(quoting <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir.), *cert. denied*, 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991)), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  "[T]he linchpin for conspiracy is agreement, which presupposes communication." <u>Id</u>.  The mere stringing together of

16

events in the criminal process without a showing of contacts
demonstrating that an understanding was reached is not sufficient
to establish a conspiracy. *See* <u>Harvey v. Harvey</u>, 949 F.2d 1127,
1133 (11th Cir. 1992) (ruling that stringing together the discreet
steps in the commitment process without alleging contacts which
would prove that an understanding was reached did not state a
conspiracy claim).  Moreover, vague and conclusory conspiracy
allegations are subject to dismissal. <u>Fullman v. Graddick</u>, 739
F.2d 553, 556-57 (11th Cir. 1984).  Therefore, Plaintiff has
failed to state a conspiracy claim against Defendants Mason and
Weaver.[3]

Furthermore, Plaintiff is suing investigators Mason and
Weaver for their testimony at his trial.  However, they are
entitled to absolute immunity from damages for their testimony at
Plaintiff's trial. <u>Briscoe v. LaHue</u>, 460 U.S. 325, 326, 346, 103
S.Ct. 1108, 1111, 1121, 75 L.Ed.2d 96 (1983) (holding that a
police officer was entitled to absolute immunity for his
perjurious testimony at trial).  Accordingly, an alternative basis
for a frivolity dismissal of the damages claims against Defendants
Mason and Weaver for their allegedly false trial testimony is

---

[3]In the complaint, Plaintiff makes many conspiracy
allegations that are directed to numerous Defendants in an
arbitrary manner.  These allegations do not reflect that there
was an agreement, nor do the allegations contain a description of
one overriding conspiracy for a certain purpose and of the roles
that were performed by certain persons to carry out this
conspiracy.

absolute witness immunity.[4]

The other claim that Plaintiff brings against Defendants Mason and Weaver is for his arrest on January 9, 2001, on the charge of firing into an occupied vehicle. (Claim A).  At this time, it appears that this claim is not precluded by the holding in Heck because, if the Court were to rule favorably on it, its ruling would not have the effect of invalidating Plaintiff's conviction for firing into an unoccupied vehicle. Hughes v. Lott, 350 F.3d 1157, 1160-61 (11th Cir. 2003).  Accordingly, Plaintiff's claims based on his January 9, 2001, arrest may proceed in this action unless another bar exists to the claim proceeding. Heck, 512 U.S. at 487 n.7, 114 S.Ct. at 2373 n.7.

However, another bar does exist to preclude this claim from advancing in this action - the statute of limitations.  The statute of limitations in Alabama for a § 1983 claim is two years. Lufkin v. McCallum, 956 F.2d 1104, 1106, 1108 (11th Cir.), cert. denied, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); ALA. CODE § 6-2-38(l).  The statute of limitations

---

[4]In Abella v. Rubino, 63 F.3d 1063, 1065 n.3 (11th Cir. 1995), the Eleventh Circuit opined that it is preferable to dismiss defendants on absolute immunity grounds before the issue of ripeness is decided under Heck.  In regard to the claims against Defendants Mason and Weaver, the Court discussed all of the grounds for dismissal due to the 2001 arrest claim which is subject to dismissal on a ground other than absolute immunity and Heck.  However, in regard to the other Defendants, the Court has foregone a Heck discussion, although it may be applicable, and addressed other grounds for dismissal, such as absolute immunity, lack of state action, failure to state a claim, etc.

> "'does not begin to run until the facts which
> would support a cause of action are apparent
> or should be apparent to a person with a
> reasonably prudent regard for his rights.'"
> <u>Calhoun v. Alabama Alcoholic Beverage Control
> Board</u>, 705 F.2d 422, 425 (11th Cir. 1983)
> (quoting <u>Reeb v. Economic Opportunity Atlanta,
> Inc</u>., 516 F.2d 924, 930 (5th Cir. 1975)).
> Thus Section 1983 actions do not accrue until
> the plaintiff knows or has reason to know that
> he has been injured. *Calhoun*, 705 F.2d at 424;
> <u>Rubin</u>, 621 F.2d at 116; <u>Lavellee</u>, 611 F.2d at
> 1131.  Nor will a Section 1983 action accrue
> until the plaintiff is aware or should have
> been aware who has inflicted the injury.
> <u>Lavellee</u>, 611 F.2d at 1131 (quoting <u>United
> States v. Kubrick</u>, 444 U.S. 111, 100 S.Ct.
> 352, 62 L.Ed.2d 259 (1979)).

<u>Mullinax v. McElhenney</u>, 817 F.2d 711, 716 (11th Cir. 1987).

In the present action, Plaintiff alleges that he was arrested
on January 9, 2001, on the charge of firing into an occupied
vehicle. (Doc. 1).  It is reasonable to infer that Plaintiff knew
about the defect in the charge against him at the time of his
arrest because the vehicle had not been occupied and, most
assuredly, he knew on February 7, 2001, when he was indicted on
the more accurate charge of firing into an unoccupied vehicle. *Cf.*
<u>Ashcroft v. Randel</u>, 391 F. Supp.2d 1214, 1224 (N.D. Ga.
2005)(ruling the cause of action accrued when the indictment was
issued because the standard to be applied is an objective one);
<u>Reynolds v. Murray</u>, 2006 WL 228167, at *2(11th Cir. Jan. 1,
2006)(affirmed the *sua sponte* dismissal of the search and seizure
claim as being barred by the two-year statute of limitations
because the claim was the foundation of his 2001 guilty plea and

the claim would have been apparent to a person with a reasonable regard for his rights well before the May 2005 filing) (unpublished).  Nonetheless, Plaintiff filed this action on February 19, 2004, which is well beyond two years from his January 9, 2001 arrest.

Furthermore, Plaintiff's allegations fail to demonstrate why the two-year statute of limitations should not be applied to bar his claims, as Plaintiff has advanced no facts upon which to base an equitable tolling argument. Akins v. United States, 204 F.3d 1086, 1089 (11th Cir. 2000) ("'Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'") (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)), cert. denied, 531 U.S. 971, 121 S.Ct. 410, 148 L.Ed.2d 316 (2000); Justice v. United States, 6 F.3d 1474, 1479-80 (11th Cir. 1993) (citing Irwin v. Department of Veterans' Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 45-58, 112 L.Ed.2d 435 (1990)) (equitable tolling is an extraordinary remedy which is to be used sparingly and does not extend to garden variety claims of excusable neglect).  Accordingly, the undersigned finds that Plaintiff's claims against Defendants Mason and Weaver based on his January 9, 2001, arrest are barred by the two-year statute of limitations and are due to be dismissed as frivolous.

20

**B.  Claims Against Defendant Gena Mixon Kelly**.

Plaintiff contends that Defendant Kelly, his former girlfriend, violated his rights under the United States Constitution and the Alabama Constitution when she conspired with Defendants Mason, Weaver, Chapman, and Hare by giving Mason and Weaver a false statement that Plaintiff shot twice into her car, thereby causing his arrest, (Claims B & T), by making the same statement before the grand jury because she was threatened by Defendants Chapman and Hare with perjury, and by giving the same statement at Plaintiff's trial when she testified that her prior statement was true and she did not want to change her statement. (Claims I, P & T).  In addition, Plaintiff avers that Defendant Kelly conspired with Defendant Chapman and Hare to commit perjury (Claim I), that is, Defendant Kelly "formed a deal with Prosecutor Tommy Chapman, and Dawn Hare that she would testify against Plaintiff in Conecuh County and Monroe County in exchange that she would not be prosecuted," (Claim P).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by* Daniels v. Williams, 474

21

U.S. 327, 330-31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).
Defendant Kelly is not identified as a person who typically acts
under color of state law, nor is she known to the Court as such a
person.  A person who is not a traditional state actor may be
found to be acting under color of state law only if that person
has conspired with a state actor. Polk County v. Dodson, 454 U.S.
312, 318 & n.7, 325, 102 S.Ct. 445, 450 & n.7, 453, 70 L.Ed.2d 509
(1981); Willis v. University Health Services, Inc., 993 F.2d 837,
840 (11th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 468, 126
L.Ed.2d 420 (1993). Plaintiff herein has merely alleged that a
conspiracy existed and that Defendant Kelly was a part of it with
state actors.

Although Defendant Kelly is alleged to have participated in
this conspiracy when she gave Defendants Mason and Weaver the
false information, the other allegations in Plaintiff's complaint
contradict the notion that she was participating in any kind of
conspiracy at that time.  According to Plaintiff, Kelly, of her
own volition, contacted law enforcement officials to give a
statement in retaliation for Plaintiff's failure to help her clear
up her bad check charges and for ejecting her from his
grandmother's house. (Doc. 1 at 14).  Plaintiff's specific
allegations regarding Defendant Kelly's actions immediately prior
to contacting law enforcement officials and then her initial
contact with them cannot be reconciled with the nebulous

22

allegations of conspiracies contained in his complaint.  Thus, the undersigned finds that Plaintiff has failed to proffer facts which suggest that Defendant Kelly engaged in a conspiracy with a state actor prior to her grand jury testimony. *Cf.* Battle v. Central State Hosp., 898 F.2d 126, 130 n.3 (11th Cir. 1990)(finding "allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal").  As a result, Defendant Kelly did not act under color of state law prior to testifying before the grand jury.  Accordingly, this claim against her is frivolous.

Plaintiff also alleges that Defendant Kelly testified before the grand jury pursuant to Defendants Chapman and Hare's threats of perjury, and at trial in exchange for Defendants Chapman and Hare's agreement not to prosecute, which Plaintiff contends was a conspiracy.  The law is well settled that a witness before the grand jury and at trial is entitled to absolute immunity from damages for his or her testimony regardless of its truthfulness or whether the witness is a state actor. Briscoe*,* 460 U.S. at 326, 346, 103 S.Ct. at 1111, 1121 (trial); Jones v. Cannon*,* 174 F.3d 1271, 1281 (11th Cir. 1999) (grand jury).  Absolute immunity for witnesses existed at common law because witnesses were an integral part of the judicial process and needed protection so they "would not be deterred by the prospect of subsequent vexatious litigation." Briscoe*,* 460 U.S. at 335 & n.15, 103 S.Ct. at 1115-16

23

& n.15.   This witness immunity extends to § 1983 actions as witnesses perform an important function in bringing litigation to a resolution. Id. at 345-46, 103 S.Ct. at 1121.   Therefore, the undersigned concludes Defendant Kelly is entitled to absolute immunity for her testimony as a witness in both proceedings. Accordingly, the damages claims against Defendant Kelly for her testimony are frivolous and are subject to dismissal.

### C.   Claims Against Defendant Laura R. Grantham.

Plaintiff asserts that on or about February 22, 2002, Defendant Grantham was retained to represent him. (Claim C). According to Plaintiff, although he went to her office to prepare for trial, he was convicted and sentenced to twenty-five years' imprisonment. Id.   Shortly after trial, Plaintiff's grandmother retained Dr. Harden, a ballistics expert, who concluded that the hole in bumper was not a bullet hole. Id.   Defendant Grantham filed a Motion for New Trial or Arrest of Judgment claiming that Plaintiff's arrest was without probable cause and the arrest warrant was issued without probable cause; however, these issues were not argued when the motion was heard on July 22, 2002. Id. Plaintiff contends that Defendant Grantham knew or should have known that the newly discovered evidence made it impossible for Defendants Mason and Weaver to have probable cause to arrest him; thus, she conspired in violating Plaintiff's Fourth Amendment rights. Id.   Additionally, Plaintiff contends that Grantham knew

Defendant Kelly's statement was fabricated and that his  arrest was an unreasonable seizure. <u>Id</u>.

According to Plaintiff, Grantham knew before the March 4, 2002, meeting with Plaintiff's lawyer on the Conecuh County case and Circuit Judge Welch that Plaintiff would be hiring a ballistics expert. (Claim F).  At the settlement meeting, Judge Welch is alleged to have said, "The boy wanted a new trial, the boy's going to get a new trial," and then set Plaintiff's case for trial on March 12, 2002. <u>Id</u>.  Grantham moved for a continuance; however, she failed to provide Judge Welch with sufficient information about the expert so that a continuance could be granted. <u>Id</u>.  Thus, Plaintiff contends that Defendant Grantham conspired with Defendant Welch. <u>Id</u>.

Plaintiff further alleges that prior to the March 12, 2002 trial, he told Grantham that Kelly had given investigators Mason and Weaver and the grand jury a false statement and that during the trial when Grantham brought Defendant Kelly's trial perjury to the attention of Judge Welch and the state's attorneys' Chapman, and Hare, she failed to utilize the "aduersorial(sic) testing process." (Claim G).  Plaintiff maintains that Grantham's acts and omissions were for the purpose of conspiring with Defendants Welch, Chapman, and Hare to violate Plaintiff's rights under the United States Constitution and Alabama Constitution. <u>Id</u>.

In order to state a claim in a § 1983 action, a plaintiff

must establish: "(1) . . . the conduct complained of was
committed by a person acting under color of state law[.]"
Parratt, 451 U.S. at 535, 101 S.Ct. at 191; Harvey, 949 F.2d at
1130.  However, in a § 1983 action, criminal defense counsel,
whether retained or court-appointed, does not act under color of
state law in the absence of a conspiracy. Polk County, 454 U.S. at
325, 102 S.Ct. at 453 (public defender); Slavin v. Curry, 574 F.2d
1256, 1264 (5th Cir.) (retained counsel), *overruled on other*
*grounds by* Sparks v. Duval County Ranch Co., 604 F.2d 976 (5th
Cir. 1979).[5]

     In Polk County, a public defender, who was paid by the State,
was sued under § 1983 by his former client, an indigent criminal
defendant.  The Supreme Court reasoned that "[e]xcept for the
source of payment, [the] relationship [between criminal defendant
and defense counsel is] identical to that existing between any
other lawyer and client." Id. at 318, 102 S.Ct. at 449.  The Polk
County Court concluded that "[t]his [relationship] is essentially
a private function, traditionally filled by retained counsel, for
which state office and authority are not needed." Id. at 319, 102
S.Ct. at 450 (footnote omitted).  The Court determined that court-
appointed criminal defense counsel carried out the traditional

---

     [5]The Eleventh Circuit in Bonner v. City of Prichard, 661
F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding
precedent the decisions of the former Fifth Circuit rendered
prior to October 1, 1981.

functions of a lawyer representing a criminal defendant and therefore did not act under color of state law. Id. at 325, 102 S.Ct. at 453. Thus, the Court ruled that the § 1983 complaint must be dismissed against the public defender for lack of state action. Id. In the present action, Defendant Grantham was a retained attorney as opposed to one who was paid by the State. Since the source of payment for Grantham's representation of Plaintiff was not the state, Grantham is further removed from acting under color of state law than the Polk County public defender.

Plaintiff alleges that Defendant Grantham conspired with Judge Welch when she failed to present sufficient information for Judge Welch to grant Plaintiff's Motion for Continuance. Plaintiff further alleges that Grantham conspired when she learned that Defendants Mason and Weaver did not have probable cause based on the newly discovered information provided by the ballistics expert. Lastly, Plaintiff maintains that Grantham's acts and omissions were for the purpose of conspiring with Defendants Welch, Chapman, and Hare to violate his constitutional rights.

These conspiracy allegations are vague and conclusory at best. Fullman, 739 F.2d at 556-57 (holding vague and conclusory conspiracy allegations are subject to dismissal). There are no facts suggesting an agreement between Grantham and any state official to convict Plaintiff or to violate his constitutional

27

rights.   Rather, the allegations only reflect specific acts or omissions by Grantham in her representation of Plaintiff.   A description of acts or omissions in the representation of a criminal defendant is not a substitute for allegations indicating an agreement to convict.  <u>Bailey</u>, 956 F.2d at 1122 (holding that in order to state a conspiracy claim in a § 1983 action, "a plaintiff 'must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy'") (quoting <u>Bendiburg</u>, 909 F.2d at 468). Therefore, the undersigned concludes that Plaintiff has failed to state a conspiracy claim and, as a consequence, has failed to show that Defendant Grantham acted under color of state law. Accordingly, Plaintiff has failed to state a claim against her.[6]

**D.   Claims Against Defendant Dewayne Beasley.**

Defendant Beasley, who was appointed to serve as Plaintiff's appellate counsel, is alleged to have conspired with Defendants Mason, Weaver, and Grantham. (Claim D).   In October 2002, Defendant Beasley was appointed to represent Plaintiff on his direct appeal.  <u>Id</u>.   According to Plaintiff, Beasley only had Defendant Grantham's Motion for New Trial when he spoke with Plaintiff in November and he failed to raise on appeal the issue

_____

[6]     Assuming *arguendo* that Defendant Grantham had acted under color of state law, then the Court would be required to analyze Plaintiff's claim against her under <u>Heck v. Humphrey</u>, *supra.*

28

that Plaintiff's arrest was without probable cause. Id.

Plaintiff is suing Beasley for his representation of Plaintiff on appeal from his second conviction, which occurred after a successful Rule 32 petition.  Beasley was appointed to represent Plaintiff in connection with the appeal of his second conviction notwithstanding the fact that Beasley had previously unsuccessfully represented Plaintiff on the direct appeal from his guilty plea and Plaintiff had filed a successful Rule 32 petition claiming, *inter alia,* that Beasley had been ineffective as appellate counsel.

Plaintiff's allegation of a conspiracy against Beasley is vague and conclusory because it lacks any supporting facts. *See* Fullman, 739 F.2d at 556-57.  While Plaintiff claims that Beasley's performance was deficient, there is no indication that an agreement was reached between Beasley and any state official so as to support a finding that a conspiracy claim had been stated. *See* Bailey, 956 F.2d at 1122.  As a consequence, Plaintiff has failed to state a conspiracy claim and has failed to show that Beasley was acting under color of state law. Polk County, 454 U.S. at 325, 102 S.Ct. at 453.  Accordingly, Plaintiff has failed to state a claim against Defendant Beasley.

**E.  Claims Against Defendant Samuel H. Welch, Jr.**

Plaintiff asserts that Defendant Welch, who is the presiding judge for the Circuit Court of Monroe County, Alabama, ALA. LEGAL

29

DIRECTORY, ROSTER OF ATTORNEYS, at 163 (2006),  violated his rights under the United States Constitution and the Alabama Constitution when he presided over the grand jury on February 7, 2001, where Kelly was forced to testify. (Claim N).  Plaintiff maintains that Judge Welch denied his Motion for Continuance, filed on March 4, 2002, despite the fact that Plaintiff had just recently been released from jail on February 20, 2002, and had only retained counsel on February 22, 2002. (Claim J).  According to Plaintiff, the denial of his continuance request prevented him from offering the testimony of a ballistics expert at trial. (Claim E). Plaintiff alleges that Judge Welch knew that Plaintiff intended to hire a ballistics expert because Judge Welch granted Plaintiff's Rule 32 petition after he had testified that he had fired only one shot. (Claim J).

Plaintiff maintains that Judge Welch allegedly conspired with Defendants Chapman and Hare on March 12, 2002, when he allowed Defendant Kelly to testify falsely, and did not did not give Plaintiff a fair trial when he admitted into evidence State's exhibits #1 and #2 for the purpose of showing that two shots were fired into Defendant Kelly's car, even though he was aware that Plaintiff's defense was that one shot was fired into the car. (Claims N and R).  According to Plaintiff, Judge Welch sought to aid Defendants Chapman, Hare, Mason, Weaver, and Kelly from being exposed for fabricating evidence, and he conspired with them to

deny Plaintiff a fair and impartial trial.  (Claims J & N).
Plaintiff further maintains that Judge Welch vindictively
sentenced him to twenty-five years on April 3, 2002, for having
exercised his constitutional rights by filing a Rule 32 petition,
which resulted in his ten-year split sentence being set aside.
(Claim L).  Then, on July 22, 2002, Judge Welch presided over the
hearing on Plaintiff's Motion for New Trial, during which Dr.
Harden testified that the hole in bumper was a tag hole punch.
(Claim R).

     In a § 1983 action, a judge is entitled to absolute judicial
immunity from damages for those acts taken while he was acting in
his judicial capacity unless he acted in the "'clear absence of
all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 357, 362, 98
S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quoting Bradley v. Fisher, 80
U.S. 335, 13 Wall. 335, 351, 20 L.Ed. 646 (1871)); Simmons v.
Conger, 86 F.3d 1080, 1084-85 (11th Cir. 1996); Scott v. Hayes,
719 F.2d 1562, 1563 (11th Cir. 1983).  A judge is entitled to this
immunity even though his action "was in error, was done
maliciously, or was in excess of [his] authority." Stump, 435 U.S.
at 356, 98 S.Ct at 1105.  Absolute judicial immunity ensures
"'that a judicial officer, in exercising that authority vested in
him, [is] free to act upon his own convictions, without
apprehension of personal consequences to himself,'" Id. at 355, 98
S.Ct. at 1104 (quoting Bradley, 13 Wall. at 347), which is a

31

"'principle of the highest importance to the proper administration
of justice[.]'" *Id.*

Based on Plaintiff's allegations, it is clear that Plaintiff
dealt with Judge Welch in his capacity as presiding judge for the
Circuit Court of Monroe County given that the complained of acts
arose from Plaintiff's contact with him in judicial proceedings or
when he was performing typical judicial acts involving Plaintiff's
criminal case.  That is, a circuit judge presides over the grand
jury; rules on pretrial motions, such as a motion for continuance;
conducts trials of individuals charged with felonies, which
entails allowing witnesses to testify and taking items into
evidence; imposes criminal sentences; and rules on post-trial
motions.  Furthermore, Plaintiff was charged and convicted of the
felony discharging a firearm into an unoccupied vehicle, ALA. CODE
§ 13A-11-61(a) (1984),[7]  and as an Alabama circuit court judge,

───────────────

[7]This statute provides, in part:

> (a)  No person shall shoot or discharge
> a firearm, explosive, or other weapon which
> discharges a dangerous projectile into any
> occupied or unoccupied dwelling or building
> or railroad locomotive or railroad car,
> aircraft, automobile, truck, or watercraft in
> this state.

> . . . .

> (c)  Any person who commits any act
> prohibited by subsection (a) hereof with
> respect to an unoccupied dwelling or building
> or railroad locomotive or railroad car,
> aircraft, automobile, truck, or watercraft

Judge Welch is required to handle the prosecution of felonies. ALA. CODE § 12-11-30(2) (1975).[8]  Accordingly, it is clear that Judge Welch was acting in his judicial capacity in his dealings with Plaintiff and within his jurisdiction.  Therefore, Judge Welch is entitled to absolute judicial immunity from any damages claims and is further entitled to have the damages claims against him dismissed as frivolous. Simmons, 86 F.3d at 1084-85.

**F. Claims Against Defendants Monroe County District Attorney Chapman and Assistant District Attorney Dawn Hare.**

Plaintiff alleges that Defendants Chapman and Hare violated his rights under the United States Constitution and the Alabama Constitution by using fabricated evidence to obtain his conviction thereby depriving him of a fair trial. (Claim G).  Plaintiff claims that they forced Defendant Kelly to testify before the grand jury when they should have known that her false testimony would result in a violation of his constitutional rights. Id. Plaintiff further avers that they deprived him of his right to a fair and impartial trial on March 12, 2002, by using the testimony of Defendants Kelly, Weaver, and Mason to establish that he shot

---

shall be deemed guilty of class C felony as defined by the state criminal code, and upon conviction, shall be punished as prescribed by law.

[8]This statute states: "The circuit court shall have exclusive original jurisdiction of all felony prosecutions and of misdemeanor or ordinance violations which are lesser included offenses within a felony charge or which arise from the same incident as a felony charge[.]"

into the vehicle twice and by entering into evidence a picture of the front tag screw hole and indicating that it was a bullet hole. (Claims G & U).  Plaintiff maintains that this refuted his affirmative defense that he fired only once accidentally, and contributed to him being found guilty. (Claims G & U).  According to Plaintiff, after exercising his constitutional rights, Defendants Chapman and Hare allegedly vindictively prosecuted him. (Claim L).  Plaintiff also claims that Defendants Chapman and Hare failed to provide him with a copy of the grand jury investigation that he requested on May 22, 2001. (Claim M).

A prosecutor is entitled to absolute prosecutorial immunity from damages in a § 1983 action for acts associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the State's case. Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985); Fullman, 739 F.2d at 558-59.  The decision of whether to prosecute is protected by absolute immunity. Imbler, 424 U.S. at 431 & n.34, 96 S.Ct. at 995 & n.34; McKeon v. Daley, 101 F. Supp.2d 79, 87-88 (N.D.N.Y.)(finding that prosecutor was entitled to absolute immunity for plaintiff's claim of vindictive prosecution that was based on the prosecutor's decision to prosecute plaintiff for perjury, which he had threatened to do if she did not testify before the grand jury, as the decision to prosecute was

encompassed under traditional prosecutorial functions), *aff'd*, 8
Fed.Appx. 138 (2d Cir. 2001). "Generally, prosecutorial actions
that occur in court are shielded by absolute immunity, *see* <u>Burns</u>,
500 U.S. at 491-92, 111 S.Ct. at 1942; <u>Imbler</u>, 424 U.S. at 430-31,
96 S.Ct. at 995, even where the prosecutor knowingly proffers
perjured testimony or fabricated exhibits, <u>Rowe</u>, 279 F.3d at 1279-
80." <u>Rivera v. Leal</u>, 359 F.3d 1350, 1354 (11th Cir. 2004). Thus,
with the exception of Plaintiff's claim that he was not provided a
copy of the grand jury investigation, Chapman and Hare are
entitled to absolute prosecutorial immunity for Plaintiff's
damages claims against them because these claims concern the
initiation of prosecution and the presentation of the State's
case.

In regard to Plaintiff's claim that he was not provided a
copy of the grand jury investigation, the Court is unable to
discern how this claim, as pleaded, is connected to the
prosecution of the criminal case, and how it presents a violation
of the Constitution or federal law. Because liability under §
1983 can only be imposed for a violation of the Constitution or
federal law, Plaintiff has failed to state a claim against
Defendants Chapman and Hare based on their failure to provide him
a copy of the grand jury investigation. <u>Parratt</u>, 451 U.S. at 535,
101 S.Ct. at 191. In the alternative, assuming *arguendo* that a
constitutional claim is presented, if the claim is not precluded

by <u>Heck v. Humphrey</u>, *supra*, then the two-year statute of limitations would bar this claim which accrued near Plaintiff's May 22, 2001, request.  That is, if Plaintiff requested the investigation on May 22, 2001, then within a reasonable time thereafter, he should have received it, and having not received it, he should have realized that his constitutional rights were violated.  However, Plaintiff filed this action on or about February 19, 2004, which is well beyond two years from when his claims accrued.  Accordingly, his claims against Defendants Chapman and Hare are due to be dismissed as frivolous.

**G.  Claims Against Defendant Steve Wadlington.**

Plaintiff alleges that Defendant Wadlington, who represented the state at the July 22, 2002, hearing on Plaintiff's Motion for New Trial, conspired with Defendants Chapman and Hare by failing to move for a new trial. (Claim K).  According to Plaintiff, Wadlington heard Dr. Harden testify that one of the holes was not a bullet hole, and based upon this testimony, Wadlington should have realized that fellow prosecutors Chapman and Hare had used fabricated testimony to gain Plaintiff's conviction, (Claims K & S), and should have therefore moved for a new trial.  Plaintiff contends that Wadlington failed to do so in order to cover up the acts and omissions of Chapman and Hare. (Claim Q).

The conduct about which Plaintiff complains occurred during Wadlington's handling of the post-trial phase of the state's

36

prosecution.  Wadlington was clearly acting as an advocate for the State and was involved in presenting the State's position on Plaintiff's Motion for New Trial.  Accordingly, Wadlington was involved in the judicial phase of the criminal process and as a result, he is entitled to absolute prosecutorial immunity on Plaintiff's damages claims.  Burns v. Reed, 500 U.S. 478, 493, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991); Imbler, 424 U.S. at 431, 96 S.Ct. at 995; see Carter v. Burch, 34 F.3d 257, 263 (7th Cir.) (finding prosecutor entitled to absolute immunity because he was acting as an advocate for the State on the post-trial motions and in the appeal preparations), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).  Therefore, Plaintiff's damages claims against Defendant Wadlington are due to be dismissed as frivolous.

**H.  Claims Against Defendant William Causey, Jr.**

Plaintiff alleges that after his Rule 32 petition was granted, the circuit court judge reinstated his bond, but then Judge Causey, who is the district court judge for the District Court of Monroe County, Alabama, ALA. LEGAL DIRECTORY, ROSTER OF ATTORNEYS, at 324 (2006), caused him to be incarcerated from February 12 to 16, 2002 to intentionally prevent him from retaining an attorney and a ballistics expert. (Claim X). Elsewhere in his complaint, Plaintiff alleges that he made a $30,000 bond when he was originally arrested for discharging a

37

weapon into an occupied vehicle. (Doc. 1, Att. at 3).  Afterwards,
while he was on bond, he was arrested for a burglary in Conecuh
County and was given a $50,000 bond on that charge. Id. at 4.
Subsequently, Plaintiff was returned to Monroe County where he
pleaded guilty to discharging a weapon into an unoccupied vehicle
on May 30, 2001, even though he told his attorney, Mr. Owens, that
he wanted a continuance to retain a ballistics expert. Id. at 6.
Eventually, Plaintiff filed a Rule 32 petition, which was granted
on January 6, 2002. Id at 7.  When Plaintiff arrived at the Monroe
County Jail on February 12, 2002, he was told that Judge Causey
had placed a hold on him because the district attorney was seeking
to have his bond increased. Id.  Plaintiff objected because
Defendant Chapman, the district attorney, was present when Circuit
Judge Welch reinstated Plaintiff's bond at the hearing. Id. at 8.
Plaintiff's bond was made and he was transferred to Conecuh County
Jail which had a hold on him.

     In a § 1983 action, a judge is entitled to absolute judicial
immunity from damages for those acts taken while he was acting in
his judicial capacity unless he acted in the "'clear absence of
all jurisdiction.'" Stump, 435 U.S. at 357, 362, 98 S.Ct. at 55
(quoting Bradley, 80 U.S. 335); see Simmons, 86 F.3d at 1084-85;
Scott, 719 F.2d at 1563.  A judge is entitled to this immunity
even though his action "was in error, was done maliciously, or was
in excess of [his] authority." Stump, 435 U.S. at 356, 98 S.Ct at

38

1105. As noted *supra*, Judge Causey is a district court judge for the District Court of Monroe County.  Based on Plaintiff's allegations, it is clear that Judge Causey's dealings with Plaintiff occurred in connection with judicial proceedings when the judge was performing typical judicial acts involving Plaintiff's criminal case.

After Plaintiff's conviction was set aside as a result of his successful Rule 32 petition, Chapman took steps to continue the state's prosecution of Plaintiff on the charge of discharging a weapon into an unoccupied vehicle; thus, the criminal proceeding in Monroe County effectively started over.  Judge Causey, as a district court judge, had jurisdiction to set Plaintiff's bail for the felony charge of discharging a firearm into an unoccupied vehicle, ALA. CODE § 13A-11-61(a)(1984). ALA. CODE § 15-11-2 (1975) (a district court judge has the exclusive jurisdiction to conduct preliminary hearings in felony prosecutions); ALA. CODE § 15-13-107(a)(any judge may approve bail within the court's jurisdiction).  Thus, it is clear that Judge Causey was acting in his judicial capacity in his dealings with Plaintiff and within his jurisdiction.  Therefore, he is entitled to absolute judicial immunity from any damages claims and to have the damages claims against him dismissed as frivolous. <u>Simmons</u>, 86 F.3d at 1084-85.

**I.  Other Relief.**

In addition to damages, Plaintiff has requested that the
Court "[d]eclare that the acts and omissions of each defendant...
subject[sic] the plaintiff to the following and above injuries and
damages as described hereinafter" and to prevent them from
retaliating against Plaintiff. (Doc. 1, Att. at 32).  Plaintiff's
request for this declaration appears to be superfluous to his
request for damages and therefore is not of consequence and is
inappropriate.  Additionally, Plaintiff's other request for relief
appears to be in the nature of injunctive relief, which is in
addition to his request for injunctive relief requiring Defendants
not to violate his rights, which is requested earlier in his
Complaint.  To request the Court to order someone not to retaliate
or not to violate his rights is similar to the Court entering an
injunction requiring someone to obey the law.  However, such
"obey-the-law" injunctions are unenforceable. <u>Florida Assoc. of
Rehabilitation Facilities, Inc. v. Florida Dept. of Health and
Rehabilitative Serv</u>., 255 F.3d 1208, 1222 (11th Cir. 2000).  Rule
65(d) of the Federal Rules of Civil Procedure requires a
restraining order to "be specific in its terms [and] describe in
reasonable detail . . . the act or acts sought to be restrained."
FED.R.CIV.P. 65(d).  "This specificity requirement is necessary 'to
protect those who are enjoined 'by informing them of what they are
called upon to do or to refrain from doing in order to comply with

40

the injunction or restraining order''. . . . Thus, an injunction must 'contain 'an operative command capable of enforcement.'''" Burton v. City of Belle Glade, 178 F.3d 1175, 1200 (11th Cir. 1999) (citations omitted).  Inasmuch as Plaintiff appears to be seeking a restraining order requiring Defendants to obey the law, any order devised by the Court would merely be a general order for the Defendants to follow the law on account of the Court's inability to fashion a precise order based on Plaintiff's failure to provide specific information.  Thus, any order would be unenforceable.

**J.  Supplemental Jurisdiction.**

Plaintiff also claims unspecified violations of the Alabama Constitution and seeks to have "each and every Defendant" prosecuted for violations of the Alabama Code.  However, because the federal claims in this action are due to be dismissed, this Court should decline to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over any state-law claims. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").  Furthermore, notwithstanding Plaintiff's prayer for relief, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." Otero v. United States Attorney General, 832 F.2d 141, 141 (11th Cir. 1987)

(affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing <u>Linda R.S. v. Richard D</u>., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)).

**IV. Conclusion.**

Accordingly, the undersigned finds that Plaintiff's federal claims are due to be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(1), because they either are frivolous or fail to state a claim upon which relief can be granted, and that his state-law claims be dismissed without prejudice.

It is at this juncture that Plaintiff should advise the Court of any information that he contends makes the Court's findings of fact and conclusions of law in the Report and Recommendation erroneous. <u>Hughes v. Lott</u>, 350 F.3d 1157, *supra*.

**The attached sheet contains important information regarding objections to the Report and Recommendation.**

**DONE** this **9th** day of **August 2006.**

        /S/ SONJA F. BIVINS
    **UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
### AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
### AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.

Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    **DONE** this **9th** day of **August 2006.**

                    **/S/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**